UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X
THOMAS ATANASIO,

      Plaintiff,              <u>MEMORANDUM AND ORDER</u>

   -against-              Civil Action No.
                          CV-05-2491 (DGT)
BROTHERHOOD OF LOCOMOTIVE ENGINEERS &
TRAINMEN, ROBERT M. EVERS,
Individually and as General Chairman
of BROTHERHOOD OF LOCOMOTIVE
ENGINEERS & TRAINMEN, and MICHAEL J.
QUINN, Individually and as First
Vice-Chairman of BROTHERHOOD OF
LOCOMOTIVE ENGINEERS & TRAINMEN,

      Defendants.

------------------------------------X

TRAGER, J.:

    On April 25, 2005, plaintiff Thomas Atanasio brought suit in
state court against his union and its president and vice-
president alleging that their actions in the proceedings leading
to his demotion violated their duties to him and constituted
discrimination.  On May 23, 2005, defendants removed the case to
federal court.  On June 22, 2005, plaintiff filed a motion to
remand.  Because a decision on a motion to remand relies on the
facts pleaded at the time of the petition for removal, the facts
below are taken from the complaint.  <u>Vera v. Saks & Co.</u>, 335 F.3d
109, 116 n.2 (2d Cir. 2003) (stating that a defendant's right to

remove a case to federal court is generally evaluated at the time
the removal notice is filed).

## Background

Plaintiff Thomas Atanasio began working for the MTA - Long
Island Railroad ("MTA") on May 7, 1997.  On February 15, 2001,
Atanasio obtained the position of locomotive engineer within the
MTA.  As a locomotive engineer, Atanasio became a member of
defendant Brotherhood of Locomotive Engineers and Trainmen
("BLET"), the union that acts as the collective bargaining
representative for all locomotive engineers and trainmen employed
by the MTA within the County of Queens, in the state of New York.
During the period of Atanasio's employment, defendant Robert M.
Evers was general chairman of BLET, and defendant Michael J.
Quinn was vice-general chairman.  Compl., ¶¶ 2-14.

On October 18, 2002, Evers and Quinn met with Atanasio to
represent him in an incident conference (also known as an
employment trial) being conducted by the MTA to address a work-
related mistake that occurred on September 24, 2002.  During this
meeting, Evers and Quinn falsely advised him that he would "not
win" in the employment trial and that the MTA wanted to terminate
his employment as a locomotive engineer.  Evers and Quinn also
advised him that BLET would not "appoint[] an arbitrator to
appeal an adverse decision."  Id. at ¶¶ 16-21.

As an alternative, Evers and Quinn informed him that he could continue working for the MTA in the Signal Department if he signed an absolute waiver of his right to a trial. Signing such a waiver would preclude Atanasio from working as a locomotive engineer in the future. Atanasio signed the absolute waiver without receiving a written offer for a position in the Signal Department and never received such an offer. He contends he was pressured into signing the waiver without first being afforded the opportunity to speak to an attorney, as he requested of Evers and Quinn. Id. at ¶¶ 22-25.

Atanasio spoke with the MTA's Human Resources Department two to three weeks later and was told there was no position for him in the Signal Department, and Evers and Quinn later denied making the offer. Four to five weeks after the October 18, 2002 meeting, Atanasio requested a due process hearing from BLET and was denied. Upon signing the waiver, Atanasio was demoted to Car Appearance Maintainer, also known as a sweeper. Id. at ¶¶ 28, 47-50.

Atanasio commenced this action against the defendants in New York State Supreme Court, Nassau County, on April 25, 2005. Atanasio alleges that because he did not receive a position in the Signal Department, he lost wages, seniority, pension, fringe benefits and other rights that would have accrued. In four causes of action based on the same facts, Atanasio seeks

$2,000,000 in damages.  Id. at ¶¶ 34-35.  Although the complaint
does not label the causes of action, they essentially state
claims of breach of the duty of fair representation, breach of
the terms of the collective bargaining agreement, negligent
infliction of emotional distress and discrimination.

On May 23, 2005, defendants removed the action to the United
States District Court for the Eastern District of New York.  The
action was removed on the ground that because BLET is a labor
representative under the Railway Labor Act, 45 U.S.C. § 151
Sixth, the claims arise under federal law, thus granting original
jurisdiction to the federal courts pursuant to 28 U.S.C. § 1331.
Not. of Removal, ¶¶ 5-6.

Atanasio filed a motion to remand on June 22, 2005,
asserting that the removal was improper because the notice of
removal failed to establish an adequate basis of federal question
jurisdiction under 28 U.S.C. § 1331.  Although filing of the
motion to remand was timely, the electronic filing only included
the first page of the motion.  The motion was fully submitted
after a fourth attempt on July 13, 2005, but the motion remains
unsigned.  Mot. in Opp. to Removal, ¶¶ 6-7.


## Discussion

The complaint does not specify whether a remedy is being
sought under state or federal law.  Because the Railway Labor Act

("RLA"), 45 U.S.C. § 151 et seq., is not a statute that enjoys
the force of complete pre-emption, and ordinary pre-emption
cannot serve as a basis of federal question jurisdiction, the
action must be remanded to state court.


**(1)**

**The Standards for Removal and Remand
Under the Railway Labor Act**

The standard governing removal of cases from state to
federal court is well-settled.  A state court action can be
removed by a defendant to federal court if the case could have
originally been brought in federal court.  28 U.S.C. § 1441(a);
Hernandez v. Conriv Realty Assoc., 116 F.3d 35, 38 (2d Cir.
1997).  In the absence of diversity jurisdiction, which neither
party asserts here, federal question jurisdiction is required for
removal.

Under the "well-pleaded complaint" rule, federal question
jurisdiction exists where a federal cause of action appears on
the face a plaintiff's properly pleaded complaint.  Caterpillar,
Inc. v. Williams, 482 U.S. 386, 392 (1987).  A complaint that
only anticipates a defense based on federal law, even the defense
of ordinary pre-emption, does not entitle a defendant to removal.
Hernandez, 116 F.3d at 38; Caterpillar, 482 U.S. at 393.  Thus,
"the rule makes the plaintiff the master of the claim; he or she
may avoid federal jurisdiction by exclusive reliance on state

5

law." Hernandez, 116 F.3d at 38 (quoting Caterpillar, 482 U.S.
at 392) (internal quotation marks omitted); see also The Fair v.
Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913) ("[T]he party
who brings a suit is master to decide what law he will rely upon
and therefore does determine whether he will bring 'a suit
arising under' [the laws] of the United States...."). In this
case, analysis of the propriety of removal is impeded somewhat by
that fact that Atanasio did not specify in his complaint whether
he was bringing his claims under state or federal law.

The standard for remanding a case back to state court after
it has been removed to federal court is also well-settled. The
party seeking remand is presumed to be entitled to a remand
unless the party seeking to sustain the removal can demonstrate
that removal was proper. United Food & Commercial Workers Union,
Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.,
30 F.3d 298, 301 (2d Cir. 1994) (holding that the party asserting
jurisdiction bears the burden of proving that the case is
properly in federal court).

Although Atanasio has not specifically pleaded a violation
based on federal law, that fact is not dispositive on the
existence of federal question jurisdiction, even under the "well-
pleaded complaint" rule. A complaint that does not plead a
federal cause of action is, nonetheless, removable to federal
court in some cases. The doctrine of complete pre-emption is one

6

such exception to the well-pleaded complaint rule.  <u>Caterpillar</u>,
482 U.S. at 393.  The complete pre-emption doctrine recognizes
that at times the pre-emptive force of a federal statute is of
such magnitude that it transforms a state law claim into a
federal claim for purposes of the well-pleaded complaint rule.
Once an area of state law has been completely pre-empted by
federal law, any claim purportedly arising under the pre-empted
state law is considered a claim arising under federal law. <u>Id.</u>

Complete pre-emption is usually associated with § 301 of the
Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  <u>See</u>
<u>Avco Corp. v. Aero Lodge No. 735</u>, 390 U.S. 557, 560 (1968).
Section 301 of the LMRA grants exclusive jurisdiction to federal
courts over claims requiring interpretation of collective
bargaining agreements and authorizes those courts to create a
body of federal law to enforce collective bargaining agreements.
<u>United Steelworkers of Am., AFL-CIO-CLC v. Rawson</u>, 495 U.S. 362,
368 (1990).  Thus, pre-emption serves the dual purposes of
avoiding "conflicting rules of substantive law in the labor
relations area and the desirability of leaving the development of
such rules to the administrative agency created by Congress for
that purpose." <u>Vaca v. Sipes</u>, 386 U.S. 171, 180-81 (1967).

The Supreme Court has held that the doctrine of complete
pre-emption also applies to § 502(a) of the Employee Retirement
Income Security Act ("ERISA"), 29 U.S.C. § 1132(a); <u>see</u> <u>Metro.</u>

<u>Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65-66 (1987), and to §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85-86; <u>see</u> <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 7-11 (2003).

Until recently, the rule of this circuit was that certain state law claims covered by the RLA were completely pre-empted as well. <u>Shaffi v. British Airways, PLC</u>, 83 F.3d 566, 569-70 (2d Cir. 1996) (stating that state law claims requiring interpretation of a collective bargaining agreement are pre-empted by the RLA). Specifically, when a state law claim required resolution of a minor dispute under the RLA, any such claim was completely pre-empted by the RLA. <u>Id.</u> This position was based on the holding in <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 263 n.9 (1994), that the requirements for pre-emption are the same under both the LMRA and the RLA, despite the fact that employers and employees covered by the RLA are expressly exempted from the LMRA. 29 U.S.C. § 152(2)-(3). The Court stated that because of the similarities between the pre-emption requirements of the RLA and LMRA, the shared purposes and parallel development of these statutes and the utility of a uniform labor law of pre-emption, the principles used to determine if a claim requires interpretation of a collective bargaining agreement, and is thus pre-empted, are the same for both statutes. <u>Hawaiian Airlines</u>, 512 U.S. at 263 n.9. Therefore, the <u>Shaffi</u> court concluded that because the standards

for pre-emption are the same, and the LMRA completely pre-empts state law, the RLA must also completely pre-empt state law. <u>Shaffi</u>, 83 F.3d at 569.

However, the Second Circuit has recently held that a state law claim requiring the resolution of a minor dispute under the RLA is not entitled to complete pre-emption. <u>Sullivan v. American Airlines, Inc.</u>, 424 F.3d 267, 276 (2d Cir. 2005). In order to analyze the significance of this decision to the case at hand, it is first necessary to summarize the purpose and requirements of the RLA. Congress passed the RLA in order to enhance the stability of labor-management relations by establishing a mandatory mechanism for resolving labor disputes. <u>Atchison, Topeka & Santa Fe Ry. Co. v. Buell</u>, 480 U.S. 557, 562 (1987). To achieve this goal, the RLA provides a mandatory process of dispute resolution for two kinds of disputes. The first kind, known as "major disputes," are those between employees and carriers involving the formation of collective bargaining agreements as they relate to rates of pay, rules or working conditions. 45 U.S.C. § 151a(4). The second kind, known as "minor disputes," are those stemming from grievances resulting from the meaning or interpretation of already existing agreements covering rates of pay, rules or working conditions. 45 U.S.C. § 153, First (i); <u>see also</u> <u>Buell</u>, 480 U.S. at 562-63.

The RLA vests jurisdiction to hear minor disputes
exclusively in an adjustment board established by the employees
or its representative and the carrier. Before going to an
adjustment board, an aggrieved party must first attempt to
resolve the issue by resorting to the carrier's internal dispute
resolution procedures. If that process fails, the RLA vests
jurisdiction to resolve the dispute exclusively with the
adjustment board, which issues a final determination on the
merits. 45 U.S.C. § 184. Although an adjustment board has
exclusive jurisdiction to resolve minor disputes, such disputes
can exist only between a carrier and its employees. Thus, an
adjustment board lacks jurisdiction over disputes between a union
and its members. <u>Vaca</u>, 386 U.S. at 180-81; <u>Steele v. Louisville
& N.R. Co.</u>, 323 U.S. 192, 205-07 (1944) (holding that the RLA
creates a duty on behalf of unions to fairly represent its
members, a breach of which is justiciable in federal court).

Because the RLA grants exclusive jurisdiction over minor
disputes to an adjustment board, both state and federal courts
lack jurisdiction to hear these claims. 45 U.S.C. § 184. Prior
to <u>Sullivan</u>, a state court action involving a minor dispute,
which by definition requires interpretation of a collective
bargaining agreement, was pre-empted and treated as a claim
arising under federal law. <u>Shaffi</u>, 83 F.3d at 569. But because
federal courts also lack jurisdiction to hear these claims, once

10

the claim was properly removed under 28 U.S.C. § 1441, the federal court then dismissed the case for a lack of subject matter jurisdiction.  Thus, any such claim removed from state to federal court had the effect of conferring jurisdiction upon the federal court due to the RLA's complete pre-emption of minor disputes, and thereafter divesting the federal court of jurisdiction because of the RLA's grant of exclusive jurisdiction to an adjustment board for the resolution of such disputes. See, e.g., Sirios v. Business Express, Inc., 906 F. Supp. 722, 729 (D.N.H. 1995).  This resulted in the anomaly that a federal court exercised jurisdiction only to announce that it lacked the very jurisdiction it had just asserted.  Sullivan, 424 F.3d at 276.

In Sullivan, the Second Circuit announced that unlike § 301 of the LMRA, resolution of minor disputes under the RLA is not completely pre-empted by federal law. Id.  The Sullivan court noted that the analogy between the pre-emption standards of the LMRA and RLA in Hawaiian Airlines clearly extended to ordinary pre-emption, although not to complete pre-emption.  Id. at 275. In other words, Hawaiian Airlines made the standard for determining if pre-emption exists the same for both the LMRA and the RLA, but said nothing about the kind of pre-emption that would result in either case.  In support of this idea, the court pointed to Beneficial Nat'l Bank, 539 U.S. at 8, in which the Supreme Court recently added the National Bank Act as a third

statute entitled to complete pre-emption. 12 U.S.C. §§ 85-86.
The Court in <u>Beneficial Nat'l Bank</u> explicitly stated that the
only two statutes entitled to pre-emption thus far were
the LMRA, 29 U.S.C. § 185(a), and ERISA, 29 U.S.C. § 1132(a). 539
U.S. at 8. From the failure of the Court in <u>Beneficial Nat'l
Bank</u> to mention the RLA as a statute entitled to complete pre-
emption, the <u>Sullivan</u> court concluded that the analogy between
pre-emption under the LMRA and RLA extended only to ordinary pre-
emption and not to complete pre-emption. <u>Sullivan</u>, 424 F.3d at
275.[1]

Thus, in a case like <u>Sullivan</u>, where a litigant pleads a
state law claim that requires interpretation of a collective
bargaining agreement under the RLA, only ordinary pre-emption
applies. Ordinary pre-emption, however, only asserts a defense
to the application of state law by arguing that pre-emption
requires the application of federal substantive law. <u>Ell v.
S.E.T. Landscape Design, Inc.</u>, 34 F. Supp. 2d 188, 191 (S.D.N.Y.
1999). "The mere fact that federal law might 'apply,' i.e. that
Congress intended to provide a federal defense to the application
of state law, is insufficient to establish federal question

_____

[1] Defendants argue that <u>Sullivan</u>, which dealt with a minor
dispute claim, has no application to duty of fair representation
cases. Defs.' Mem. of Law in Opp. to Pl.'s Mot. to Remand at 17.
However, <u>Sullivan</u>'s conclusion that the RLA is not a complete
pre-emption statute applies with equal force to duty of fair
representation claims.

jurisdiction."  Id.  As a defense, ordinary pre-emption cannot be considered under the well-pleaded complaint rule and, therefore, cannot be the basis for federal subject matter jurisdiction entitling the defendant to removal.  Sullivan, 424 F.3d at 271. Thus, a minor dispute brought in state court cannot be properly removed for two related reasons.  First, federal courts lack original jurisdiction over minor disputes governed by the RLA. Second, because there is no original jurisdiction, such a claim cannot be properly removed under § 1441, which only allows removal of suits "of which the district court of the United States have original jurisdiction."  28 U.S.C. § 1441(a); see also Sullivan, 424 F.3d at 276.

Furthermore, when considering the nature of pre-emption of minor disputes under the RLA, it is important to recall that not every dispute that tangentially involves a collective bargaining agreement, or merely consults or references a collective bargaining agreement, results in ordinary pre-emption.  Thus, in a case where the claim does not constitute a minor dispute, the issue of pre-emption does not arise.  The critical question in determining if a minor dispute exists is whether state law confers non-negotiable rights independent of any contractual rights derived from a collective bargaining agreement.  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211-13 (1985).  The limitations created by the RLA's resolution mechanisms for minor

13

disputes do not limit the ability of states to confer non-
negotiable rights on its citizens. It merely ensures that
collective bargaining agreements will be interpreted based on
federal law. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S.
399, 409 (1988). Even if the same set of facts are used to
resolve both a dispute regarding a state law claim and a claim
based on interpretation of a collective bargaining agreement, as
long as the state law claim can be adjudicated without
interpreting the collective bargaining agreement, the state law
action is not subject to the ordinary pre-emption that governs
minor disputes. Id. at 409-10.


**(2)**

**Application of Removal Principles to Plaintiff's Causes of Action**

**a.   First Cause of Action**

In his first cause of action, Atanasio contends that BLET,
through Evers and Quinn, "falsely and maliciously represented to
the Plaintiff that he would 'not win' at an [MTA] trial," and
that they "falsely represented that the [MTA] wished to terminate
his employment as a locomotive engineer." Id. at ¶¶ 19-20. He
further alleges that Evers and Quinn "falsely represented to
Plaintiff that his 'case' would not merit defendant BLET
appointing an arbitrator to appeal an adverse decision by the
[MTA]," and that defendants knew there was never an offer by the

MTA for a position in the Signal Department.  Id. at ¶ 21-25.

Atanasio asserts that he "reasonably and detrimentally relied

upon those statements and was thereby induced to resign his

profitable and secure locomotive engineering position."  Id. at

¶ 27.

Removal based upon the first cause of action was improper

because Atanasio did not assert any rights based on federal law.

Indeed, Atanasio nowhere specified whether he was asserting

claims under state or federal law.  His motion to remand,

however, manifests his preference to confine his claims to

whatever remedies are afforded by state law.  The general rule

that the propriety of removal should be judged at the time the

action is removed would not permit consideration of Atanasio's

motion to remand in determining whether the complaint states a

claim arising under federal law.  This circuit, however, has

recognized that a deviation of this sort is acceptable.  Vitarroz

Corp. v. Borden, Inc., 644 F.2d 960, 964 (2d Cir. 1981) (stating

that a motion to remand can be taken into account as evidence of

plaintiff's intent when determining if a complaint pleads a claim

arising under federal law).  "[S]ince the cases recognize that

the pleader whose facts would support a federal or a state law

claim has an option to invoke or bar federal jurisdiction by the

wording of his claim, we see no reason why the option period

should end on the day the complaint is filed."  Id.

Any ambiguity as to Atanasio's intention is resolved by his motion to remand. Given his clear preference to litigate his claim in state court, it would contravene the well-pleaded complaint rule to read a claim based on federal law into his complaint, even if such a claim most closely resembles the facts pleaded. Caterpillar, 482 U.S. at 392. Atanasio asserts that defendants intended to deceive and defraud him, and that they intentionally lied about the job in the Signal Department as a ruse to persuade him to forfeit his rights. Although Atanasio's assertion that he relied to his detriment on assurances made by defendants sounds in negligence and/or fraud, the allegations of willfulness and bad faith most closely resemble a breach of the duty of fair representation.

The duty of fair representation mandates that a labor union acting as an exclusive representative of employees covered by the RLA has a duty to fairly represent its members. Steele, 323 U.S. at 201-02. This duty is breached "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190. This principle is not explicitly codified in the RLA. Rather, it is an inference that arises because the RLA allows employees to designate an exclusive bargaining representative to act on their behalf in the resolution of disputes with the carrier. 45 U.S.C. § 152 Second. As a duty arising under federal law,

federal courts have jurisdiction over claims alleging a breach of the duty of fair representation. See Czosek v. O'Mara, 397 U.S. 25, 27-28 (1970); Glover v. St. Louis-San Francisco Ry. Co., 393 U.S. 324, 328-29 (1969).

In his complaint, Atanasio makes no reference to the RLA. His complaint does mistakenly state that BLET is a labor organization under section 2(5) of the Labor Management Relations Act. 29 U.S.C. § 152(5). However, even if he had correctly stated that BLET is a labor organization under the RLA, without some further indication that he is seeking relief under rights conferred by the RLA, such an inconclusive statement is insufficient to support a finding of federal question jurisdiction. As master of his complaint, which is ambiguous as to whether he is seeking relief under state or federal law, Atanasio's motion to remand clearly demonstrates his desire to rely exclusively on rights conferred by state law.[2] Therefore, the first cause of action cannot be the basis for a removal.

---

[2] Atanasio's desire to remain in state court is likely motivated by the knowledge that a federal claim for the breach of the duty of fair representation under the RLA would be barred by the applicable six-month statute of limitations. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 172 (1983).

**b.  Second Cause of Action**

In his second cause of action, Atanasio alleges that defendants "unlawfully breached the contractual agreement between the parties by falsely misrepresenting to the Plaintiff that upon signing an 'absolute waiver' to work as a [MTA] locomotive engineer, Plaintiff would continue his employment with the [MTA] in the 'Signal Department.'"  <u>Id.</u> at ¶ 31.  The allegation does not specify the source of the contractual rights and obligations or the term that defendants allegedly breached.  <u>Id.</u> at ¶¶ 29-35.

The second cause of action also cannot be a basis for federal jurisdiction.  The claim alleges the breach of a contractual duty owed by defendants to Atanasio.  Although the claim does not specify the source of the alleged rights and obligations, the only contract known to exist between the two parties is a collective bargaining agreement.  Thus, resolution of the allegation would require interpretation of the terms of the collective bargaining agreement.  The ability of employees to enter into collective bargaining agreements, and the means by which the terms of collective bargaining agreements are interpreted, are issues governed by the RLA.  However, resolution of such claims are entrusted solely to an adjustment board and thus, because the claim could not have originally been brought in federal court, the claim cannot be removed to federal court. 28

U.S.C. § 1441(a). As explained above, even though a state court also lacks jurisdiction to hear the claim, because removal was improper, the claim must be remanded so that the state court can dismiss the claim for a lack of jurisdiction.

### c.    Third Cause of Action

In his third cause of action, Atanasio alleges that during the course of representing him, defendants breached their duty to fairly represent him, a duty that is owed to all locomotive engineers and trainmen for whom BLET is an exclusive representative. Atanasio refers to a collective bargaining agreement existing between BLET and the MTA. The collective bargaining agreement allegedly provides that the interests of locomotive engineers "shall be represented by defendant general chairman Evers and vice-general chairman Quinn," and that on request by the union, disputes regarding violations and grievances "shall be determined under the grievance and arbitration procedures of the agreement." Id. at ¶ 41. Atanasio also alleges that defendants' actions violated the provisions of the constitution and by-laws of BLET. Id. at ¶¶ 36-45.

Atanasio further alleges that defendants "arbitrarily and capriciously failed to fully investigate Plaintiff's grievance; displayed preferential treatment to other employees with similar grievances, failed to follow its normal and customary practices

in the handling of grievance procedures; and without reason, has failed to demand arbitration, thus depriving Plaintiff of his only opportunity to obtain an impartial hearing of his grievance...." _Id._ at ¶ 54.  Atanasio contends that these actions were carried out in "bad faith, in an arbitrary, discriminatory, perfunctory, intentional, malicious, preferential, and grossly negligent manner...." _Id._ at ¶ 55.  As a result of defendants' breach of duty, Atanasio asserts he was precluded from exhausting his remedies under the collective bargaining agreement and that he has suffered, in addition to the injuries stated above, "humiliation, emotional distress, anxiety and requires continuing psychological therapy and counseling...." _Id._ at ¶ 60.  He contends that his reputation as an outspoken critic of BLET led defendants to retaliate against him.  _Id._ at ¶¶ 54-60.

The third cause of action also does not provide a basis for federal jurisdiction.  Although this claim most closely resembles a breach of the duty a fair representation, Atanasio's failure to seek a remedy under federal law prevents removal under 28 U.S.C. § 1441.

It is not dispositive that Atanasio's third cause of action implies that his rights under the terms of the collective bargaining agreement were violated.  A claim that merely references a collective bargaining agreement, but does not

require interpretation of its terms for resolution, does not

constitute a minor dispute that can only be heard by an

adjustment board. <u>Allis-Chalmers</u>, 471 U.S. at 211-13.

Atanasio's claim merely states that the agreement required Evers

and Quinn to represent him in disputes before his employer and

that disputes regarding violations and grievances would be

determined by arbitration upon request of the union. Resolution

of this claim does not require interpretation of these terms

because Evers and Quinn, acting on behalf of BLET, did represent

Atanasio until he signed the absolute waiver, after which there

was no need for the union to request arbitration. The only

question is whether defendants' representation constituted

conduct that was arbitrary, discriminatory or in bad faith and

thus breached their duty to fairly represent Atanasio. <u>Vaca</u>, 386

U.S. at 190.

Alternatively, if the third cause of action does require

interpretation of the terms of the collective bargaining

agreement, it must be remanded to the state court, where it will

be dismissed for lack of jurisdiction, as such a claim can only

be resolved by the adjustment board. <u>Sullivan</u>, 424 F.3d at 276.

The third cause of action also alleges a claim that

resembles negligent infliction of emotional distress, a tort

claim governed by state law. Without a separate basis of federal

question jurisdiction that could serve as a basis for asserting

supplemental jurisdiction, specifically, one arising from a common nucleus of operative fact and of the type that would be expected to be tried in one judicial proceeding, any such claim based solely on state law cannot be properly removed on its own. 28 U.S.C. § 1367(a).  <u>See</u> <u>Chicago v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 165 (1997).


d.    **Fourth Cause of Action**

     In the fourth cause of action, Atanasio alleges that on September 1, 2002, he informed Evers and Quinn that he was diagnosed with Hepatitis C.  He claims that defendants' intentional misrepresentations and other acts were taken against him solely because he is a carrier of Hepatitis C.  <u>Id.</u> at ¶¶ 62-75.

     This is yet another claim that could be construed under either state or federal law.  Under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 <u>et seq</u>., acts of discrimination by a covered entity against a qualified individual with a disability with respect to advancement, discharge, compensation or other terms, conditions and privileges of employment are prohibited.  42 U.S.C. § 12112(a).  However, nowhere in the complaint does Atanasio assert the infringement of any rights conferred by the ADA.

On the other hand, Atanasio's fourth cause of action may be viable under the New York Human Rights Law ("NYHRL") and/or the New York City Human Rights law. However, Atanasio's claim that defendants' actions were based on discriminatory motives also resembles a breach of the duty of fair representation. Any adverse actions taken by defendants based solely on his status as a carrier of Hepatitis C would constitute treatment that is arbitrary, discriminatory and in bad faith, and would constitute a breach of the duty of fair representation. <u>Vaca</u>, 386 U.S. at 190. Thus, should Atanasio succeed in alleging a breach of rights conferred by the NYHRL in state court, this claim may still be subject to ordinary pre-emption, because it is subsumed by the duty of fair representation imposed by the RLA. <u>Rodolico v. Unisys Corp.</u>, 96 F. Supp. 2d 184, 187 (E.D.N.Y. 2000) (Spatt, J.) (stating that it is "the duty of the representative organization to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct") (internal quotations and citations omitted). A claim brought under the NYHRL that mirrors rights already existing under the duty of fair representation is pre-empted because it "seek[s] to vindicate the same rights as those protected by the federal duty of fair representation and impose no obligation on the union that is not already required by the

duty of fair representation." <u>Angrisiani v. Long Island R.R.</u>,

No. CV-01-8453, 2005 WL 1311798, at *7 (E.D.N.Y. June 1, 2005).

However, as stated above, there is no reference in the complaint

to rights conferred by the RLA.  In the absence of some

indication from Atanasio that he seeks a remedy under federal

law, the claim does not provide a basis for federal jurisdiction.


## Conclusion

        For the foregoing reasons, the motion to remand is granted.

The Clerk of the Court is directed to close the case.


Dated:     Brooklyn, New York
           March 27, 2006


                              SO ORDERED


                              _____/s/_____
                              David G. Trager
                              United States District Judge